The opinion of the court was delivered by
Manning, C. J.
The defendant is a married woman, separated in •property from her husband. The judgment of separation was rendered •at her instance in 1873, upon her suit for the recovery of her paraphernal •claim. Her husband was at that time a member of the commercial ■firm of Balfour & Co., at Rayville. In part satisfaction of his wife’s .'judgment, rendered on May 8th. he conveyed to her on the 9th. all of *1158 his property; viz an undivided interest in certain lots of ground and improvements in the village where they lived, and also his share and interest in the mercantile firm of Balfour & Co. Thereupon Mrs. Rush, became a partner in that firm, and her husband went into bankruptcy..
Britton, Moore, and Coleman were the New-Orleans factors and correspondents of Balfour & Co. By March 1876, the Rayville firm had become indebted to the New-Orleans firm in the sum of $4,841 00, and suit was instituted for its recovery. Pending that suit a compromise was made, by which Balfour paid or satisfactorily settled with the plaintiffs therein for his part of the debt, and Mrs. Rush gave her two notes-for her part of it, and executed a mortgage to secure them, and also-pledged other notes of other parties, owned by her as collateral. Her notes, thus given, did not mature until nearly one and two years after their date. '
These notes were not paid, and the present plaintiffs, now holding them under a transfer from their former firm (Britton having retired), bring this suit to obtain judgment for the amount of the notes, and a foreclosure of the mortgage, and a sale of the pledged notes. The defendant resists their demand upon the grounds that the notes were given for the husband’s debt, and that she signed them, and the mortgage, under marital coercion.
There is no testimony whatever in support of the first ground. On the contrary, the proof is complete that the debt was the wife’s, contracted in her capacity as a public merchant.
The testimony relative to the second ground is conflicting, but we-have no difficulty in extracting the truth from it.. Nicholas D. Coleman, one of the plaintiffs, as a witness states that, being in Rayville the month' following the institution of the first suit, he was requested by the husband of the defendant to compromise that litigation, and that he was. averse from taking that course, but finally yielded to his entreaties. Dr. Rush was acting as the agent of his wife, and was representing her in. her commercial affairs. By the compromise resulting from that negotiation, the wife obtained two years time for the larger part of her debt, and the plaintiffs obtained the security of a mortgage. Mr. Coleman was-present when the mortgage was executed. Mrs. Rush had recently been confined, and the signatures were made in her bed-chamber, she being-still lying-in. She sat up in her bed, while Mr. Coleman handed her a-book upon which to place the paper, and a pen with which she wrote-her name. She said to him that the arrangement met her entire approval, and would enable her to pay the debt without detriment to her property, and after the signing was completed she added that she had simply performed her duty in securing his firm against loss.
The defendant’s witnesses were herself, her sister, her nephew, and! *1159 a coloured vfoman, her nurse. They narrate the incidents of a scene that preceded the execution of the mortgage and notes, when the husband is represented as inquiring whether Mrs. Rush intended to sign the papers, which she vehemently declared her determination not to do, giving vent to imprecations in attestation of her firm resolve. Her obstinacy was subdued only when her husband threatened he would go off, and take the two eldest children with him, if she did not sign. Maternal tenderness was victorious over the instinct of property preservation. These witnesses represent the notary as reading the act of mortgage in her presence with great rapidity of utterance, and impart some accessorial ornamentation to the scene. Mrs. Rush was so feeble that she could not raise her body so as to sit upright on the bed. Mr. Coleman raised her body, and supported it with his own, or with his arms, and guided her hand while the signature was traced. She had heen daily visited by her physician, who had alleviated her pains by copious opiates,.and she was thus mentally and physically incapacitated for transacting business intelligently.
Mr. Coleman, the notary, and the physician emphatically contradict this story. The notary was careful to read the mortgage audibly and distinctly in Mrs. Rush’s hearing. Her husband suggested to him to dispense with the reading, but he would not. “ I was on my guard, he says, and was careful to read it clearly and distinctly, for I expected that they would try to take some advantage of it.” Mrs. Rush did not object to-any part of it, or express any unwillingness to sign it. She signed without help from any one, except that Mr. Coleman dipped the pen in the-ink and handed it to her, after having given her a book on which to ■write.
The physician says she was delivered on the 21st of March, and he made his last visit to her on the 24th. She sa.ys her child was born on this last day. He can not state positively, but he thinks he did prescribe-opiates, but not an unusual quantity of them.
Mr. Coleman says he did not touch her person. She sat upright without assistance, wrote her signature, and manifested no symptom of disapprobation in his presence, but on the contrary thanked him for the consideration he had shewn her. On parting he shook hands with her. There is nothing to shew that Mr. Coleman was aware, or suspected, that the husband had used any influence over his wife to induce her to sign, nor is it important that knowledge of it should be brought home to him. If the fact of threats or violence were established, it would matter little whether he knew it or not. A contract produced by either of these causes is void, although the party to be benefitted by it, was not the author of them, or was ignorant of them. Civil Code, art. 1846 new no. 1852. But if the contract has been approved after the violence or dan *1160 ger lias ceased, the previous threats will not invalidate it, and there are other instances mentioned in the Code, wherein such threats will not affect it. arts. 1819, 1852. new nos. 1855,1858.
The testimony however satisfies us that the husband’s threats, if he used the expressions attributed to him by the wife and her witnesses, were either empty menaces, not to be performed, and were so understood by his wife, or that what he did say was totally different from those expressions. Other witnesses say he told her if she did not sign the mortgage, her property would be taken away from her, because the plaintiffs would press their suit (the first one) to a judgment, and then an execution would sweep it all. Feminine imagination, that can distort the polite act of a gentleman handing a pen to a lady, into mounting on the bed and using his own body as a support to hers while she wrote, is quite capable of misunderstanding words spoken with such surroundings. Even if the credibility of the witnesses wore equal, those of the plaintiff are supported by circumstances — are in accord with the probabilities, and therefore are entitled to the preponderance.
Three years before the first suit of the plaintiffs, Mrs. Rush had become satisfied that-her husband’s affairs were so deranged that prudence required her to assert her paraphernal rights. Even at that early date, she evinced her independence of marital constraint by instituting a suit against him for $1,710, and alleged that his debts to others were so large, that promptitude of action was necessary, and she prayed and obtained a judgment for all that she asked. No sooner was this judgment rendered, than she surpassed the celerity with which the law works through the medium of a fieri facias, and displayed such a mastery over her debtor that she extorted from him a conveyance of all that he had to satisfy only a part of her judgment, while he took refuge from the pursuit of less vigilant and less determined creditors under the shelter of a discharge in bankruptcy. It is not credible that a woman, who can thus bend to her-will a recalcitrant debtor, would on the very next occasion, when the safety of her property was involved, have become so complaisant as to yield to his entreaties or his threats that which she had wrested from his improvident hands.
Nor is it more credible that a man, who had flaunted his certificate of bankruptcy in the face of impotent creditors, and who is cognisant of and authorizes his wife to make the defence she does present in these pleadings, would have been so sternly and strongly impelled by the impulses of honesty as to endeavour, or to desire, to compel his wife to do what a proper regard for her own obligations should have prompted her to do of her own volition.
There is no pretence that the debt was not, and is not, owing to the plaintiffs. The allegation that it was the husband’s, and did not enure *1161 to the wife’s benefit, is seemingly abandoned, and at any rate is disproved. She was in fact solidarily bound for the whole of the original -claim, but Balfour paid a part — paid all that he ought to have paid, since in a settlement of the partnership, it was ascertained that Mrs. Rush, by paying that part of the debt which the notes now in suit represent, was paying also what she owed her partner. Nor is there any resulting injury to her from the execution of the mortgage, and the notes which it secures. Her debt was not increased. The time and terms of payment were made less onerous. The petition is wholly wanting in any ■allegation even of injury of any kind. She does not pretend in her pleadings that she has been damaged by the act which she seeks to ■annul. In her testimony, she says her credit was affected by the mortgage, and her ability to obtain supplies was lessened. In other words, that she obtained the dismissal of a suit wherein a judgment for this debt was imminent, which would have been followed by an execution to •enforce its payment, and she injured her credit by substituting to this perilous situation, one in which she obtained one and two years’ time, and assured the possession of her property, and the consequent ability to work it during that time.
The only bill of exceptions that need be noticed is that of the plaintiffs to the admission of the testimony of the defendant, and other witnesses, on the matter of violence or threats, on the ground that the ■averments of an authentic instrument could not be varied or contradicted by parol, and that the signatary of such writing is estopped in ■law and equity from denying or attempting to repudiate the transaction or compromise which is set forth in the writing.
The objections to the testimony were properly overruled. Where a married woman had expressly declared in a mortgage that the advances, secured in it, enured to her benefit, it was held that she was not estopped from shewing the contrary, and thus relieving herself from liability. Patterson v. Frazer, 5 Annual, 586. A fortiori must evidence of threats or violence, as the moving causes of her execution of the mortgage, be ■admitted, since their due proof would wholly invalidate the act.
The lower court sustained the defence of coercion, and rendered judgment against the plaintiffs. There is manifest error, and we must reverse it.
It is ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that the plaintiffs have and recover of the defendant Mary F. Rush the sum of thirteen hundred and sixty four 87-100 dollars with eight per centum per annum interest thereon from February 16, 1877, and the further sum of two thousand one hundred and forty four 27-100 dollars with the same rate of interest-thereon from February 16,1878, and the additional sum of ten per centum upon *1162 the aggregate of these two sums and interest, as attorneys fees, and the-costs of both courts including six dollars as cost of copies. It is further ordered and decreed that the mortgage claimed by the plaintiffs is recognized upon the property described therein as operating thereon from its date, and is ordered to be executed, and that the notes, called the Barfield notes, pledged for the security of the payment of the notes of defendant, be also sold to pay this judgment.
Rehearing refused.